# EXHIBIT 3

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF MARIN

The People of the State of California,)
                              Plaintiff,)
                                        )
                                        )
                    -vs-                )
                                        )
                                        )
FIKRI BAYRAMOGLU,                       )
                              Defendant,)
_____

**FILED**

10/5/82

PETER MEYER
MARIN COUNTY CLERK
BY _____

Action No. 8215
DEPT. NO. V
SEPT. 17, 1982

THE PROBATION OFFICER'S REPORT AND RECOMMENDATION
TO THE ABOVE-ENTITLED HONORABLE COURT

OFFENSE:                          Violation of Section 187.2 PC, 2nd
                                  degree murder, with use of a firearm
                                  within the meaning of 12022.5 P.C. and
                                  1203.06(a)(1) PC.
GUILTY-JURY VERDICT:              8/13/82
DATE OF JUDGMENT:                 9/29/82
ATTORNEY FOR THE DEFENDANT:       Public Defender
CUSTODY STATUS:                   Jail
AGE OF THE DEFENDANT:             33 Years (DOB: 12/12/48)

PRESENT OFFENSE

Arrest Report:

    The San Rafael Police Department reports that on April 17, 1980,
at approximately 9:15 p.m., officers responded to United Liquors on
4th Street in San Rafael and observed Fikri Bayramoglu lying on the
floor of the store with a large amount of blood on his person. Two
clerks in the store observed Bayramoglu enter the store and noted that
he was stumbling and wearing only shorts smeared with blood. One clerk
heard Bayramoglu say he killed his wife and wanted to die. Another
clerk heard Bayramoglu yell, "Tracy, Tracy, I want to die with you."
The clerk said he heard the defendant say he killed her. Bay-
spontaneously stated to the officers "I killed my girl friend
God, I killed my girl friend." Officers checked the surround

-1-

FIKRI BAYRAMOGLU — NO. 8215

and observed small spots of blood which formed a path of travel to
1565 – 4th Street. An officer followed the path of blood to apartment
7 and when he arrived there, the door was partially open. He looked
inside and observed a white female who was nude, lying on her back just
inside the doorway. The officer noted that there was a considerable
amount of blood on her body and about the floor of the apartment. The
officer could detect no signs of life from the female who was later
identified as Tracy Lee Jones. The officer noted that Jones had suf-
fered several bullet wounds to the upper chest portion of her body.
The officer also observed a wooden handled six-inch straight knife on
the floor near Jones' right elbow. This knife appeared to have blood
on it.

A Coroner's Report indicated in part the following:

> "5 separate circular punctate wounds
> were observed on the anterior surface
> of the remains; at the top of the left
> shoulder, midway to the base of the
> neck; above the left breast with a
> distinct circular powder burn; slightly
> below the left breast with slight darkened
> edges; lateral to and below the left breast
> (on the chest sidewall) with distinct powder
> burns; on the upper right quadrant of the
> abdomen with little or no detectable powder
> burns."

At about 9:30, an ambulance left United Liquors and Bayramoglu
was taken to the emergency room at Marin General Hospital. A police
officer was assigned to accompany Bayramoglu to the hospital and he
noted that the suspect appeared to be suffering from a puncture wound
in the upper left chest area. Other puncture wounds were noted in the
lower right side of his abdomen. Six wounds in all. As the suspect
was being placed into the ambulance he asked several times, "What
about Tracy? Is she dead?" He then stated "I killed my girl, please
let me die. I stabbed myself in the heart and still did not die."
The officer noted that Bayramoglu pleaded with the attending paramedic
to let him die. While at the hospital, the suspect stated, "Three
times I shoot her so I have two bullets to kill myself." Bayramoglu
then stated that he and the victim lived together in his apartment for
two years and that on February 5, they broke up. They decided they
would see one another on weekends. The weekend before last, the victim

FIKRI BAYRAMOGLU - NO. 8215

did not show up at the suspect's apartment as usual. This last weekend the victim made the visit, during which the victim stated she had been seeing another man. It was at this time that suspect Bayramoglu stated, "I decided we should die together."

A few hours later, while still at Marin General Hospital, Bayramoglu awoke and stated to a San Rafael Fire Department paramedic that he stabbed himself and had attempted to kill himself by plunging a steak knife into his chest in the area of his heart and then by twisting the knife around inside his body. The suspect went on to say that he had attempted to find some bullets apparently to inflict injury upon himself but that he could not find any bullets to do so.

On April 17, 1980 at approximately 11:40 p.m., San Rafael Police Officers interviewed Bayramoglu at the Intensive Care Unit of Ross General Hospital. Bayramoglu stated in part:

> "I deserve to get killed, that's what I'm saying, you recording it, go ahead. I deserve to get killed off, I killed somebody I wanted to die with her. I deserve to get killed. That's all there is to it. I did, I tried, God knows I couldn't find the bullets, I just freaked out, and the one in the kitchen gets a big knife to put in my heart, it didn't go that far, that steak knife went in there all the way and I turned it around still couldn't kill myself and then I shoot myself in the stomach everywhere. I put the knife I got in my heart in the hole again, I twist around in there to kill myself, I wasn't dying. The reason I could have died there and close the door with the blood or something and Tracy was breathing, I wanted to save her. I wanted to save her that's why I went downstairs to get help. So I deserve to get killed. But I begged her to know, I told her how much I loved her. Life was, life wasn't important for me any at all, my life has turned upside down since I haven't seen her....I appreciate this country. I love it. I even change my religion. I become a Christian, huh, who's going to believe that now. So, law even forgive me doesn't matter, Jesus not going to forgive me. So you can ask anything you like officer.....I don't think obviously my brain is working right now, it hasn't since last four days I was out of food, I didn't eat, last four days, plus

FIKRI BAYRAMOGLU - No. 8215

> "I'm a sick person.  I have ulcers.  I
> wasn't just a normal person.  I was
> just out of my mind."

On April 20, 1980a San Rafael Police Officer spoke with Mickey
Harris, the sister of the victim.  Mrs. Harris stated that she b-
lieved her sister was in love with Bayramoglu but that the relation-
ship between them was beginning to disintegrate.  Harris said
Bayramoglu was very jealous and possessive.  Harris said that her
sister told her she had been trying to break off her relationship
with Bayramoglu for three months.  Harris said that on one occasion
when her sister tried to end the relationship with Bayramoglu, he
threatened to kill himself.

Defendant's Statement:

Fikri Bayramoglu submitted the following written statement
to the Probation Department describing the circumstances which led
to his arrest.  It is quoted verbatim:

> "The pure fact is that bottom of my
> heart I know and believe I did not
> murder my darling.  She is my darling
> I loved her and always will.
>
> I am very deeply sorry that this tragedy
> take place, and she gets killed.
>
> I almost get killed too.  I see two
> victims here, beside our people too.
>
> This is the worst think ever to happen
> to me.  It's very clear to me now we are
> humans we do make mistakes.  I never love
> this way again.  Regardless tragedy, mis-
> take, severe depression, mental illness,
> whatever it is.  Am I responsible of this?
> To answer that question.
>
> All I can say is that, this is not that
> something I want to do.
>
> I just couldn't have control over my
> actions those days.  I did this invol-
> untarily, to both of us same time.  I
> am very sorry!  I never ever did murder
> her, or intend to kill her.  This is the
> pure fact.
>
> Some facts are very painful to accepted.
> What can I do about it.  I have accepted
> the things as they are. Ever very deeply
> sorry!"

**FIKRI BAYRAMOGLU - NO. 8215**

Regarding plans the defendant has made which will help keep him out of trouble in the future, he wrote:

> "I never begin in any trouble or victim
> of any tragedy in my life before this
> one. My plans are accept the facts
> as they are live before them best is I
> can."

Regarding the disposition of his case, the defendant wrote:

> "The fact is that I did not commit murder
> and I did not intend to kill, I never
> have and never will. I think that my
> trial is illegal reason is fair trial
> violated by jury and by judge. This is
> one of the grounds Penal Code 1181.2
> says so. To me I am not convicted
> legally. Certainly my lawyer will ask
> for mistrial again. If is the new trial
> denied, we will appeal it again. 29
> months in County Jail is unusual. I
> still believe there is justice in USA
> for Turks to,"

In addition to discussing the above written statement, Fikri Bayramoglu stated to this officer that he came to the United States from Turkey about 10 years ago. He said he met a lady named Kathy, who he described as his first love. He says he dated her for about 6 to 8 months and broke up with her. He said the breakup of this relationship hurt him and he stayed away from serious relationships with women after that. He said in 1977 he went back to Turkey, but only stayed there a few months. Bayramoglu said he did not living in Turkey so he returned to the United States shortly after his arrival in that country. He said his father was very upset when he left and he added that his father "prayed" that he would be unhappy. Bayramoglu said this upset him very much, and shortly after he arrived in the United States for the second time, he was baptized in a Christian church because he wanted forgiveness from his father's curse.

Bayramoglu said he was not doing very well during this time period. He said he was living by himself and financially he was just barely making it. He sayd he prayed and read his Bible asking for financial help and companionship. During this period, he said he came to Marin County to visit a friend and that's when he met Tracy

**FIKRI BAYRAMOGLU - NO. 8215**

Jones.  Bayramoglu said he thinks his prayers were answered when he met Tracy.  Bayramoglu described Tracy as a "beautiful person - inside and out - not just physical."  He said he started to live with Tracy and he says he was very happy.  Until their relationship was "torn" apart because Tracy had to leave him to care for her mother who lived in Mt. View, California.

Bayramoglu says that after Tracy left him he became "a maniac" and was "deadly depressed."  He said she left him on February 5, 1980.  He says he became so "deadly depressed" he could not sleep or eat without smoking marijuana.  He said he would drive to places in his pickup truck where he and Tracy used to go.  He said he would see her and talk to her when she was not really around.  He said when Tracy would actually come and visit him on the weekends, the "other Tracy" would leave.  He says he lost about 25 pounds in a three month period and he added that he saw no reason to live.

On the day of Tracy's death, Bayramoglu said he went out and bought a gun from a person who had advertised one for sale in a newspaper.  He said he came to his apartment and Tracy was there.  He said she put her arms around him and asked him to come to bed with her.  He said he took off his pants and she had taken off her clothes when he came into the bedroom.  He said he sat on the bed facing her and he says he stated to her that he was going to kill himself.  Bayramoglu said that Tracy then touched his lips and he shot her with the gun.  He said he then put the gun to his head and asked God for forgiveness.  He squeezed the trigger but it went "click click".  Bayramoglu said he dropped the gun and looked for some new bullets, but could not find any.  He said he then put a large knife into his chest because he wanted to die with Tracy.  He said he then got a steak knife and stabbed himself several times, but he did not die.  He said he then put the steak knife into the original hole, and he passed out.  He says he laid next to Tracy and he could hear her whispering.  Realizing she was alive, he went to a nearby liquor store to see if he could find someone to save her.

In summing up this whole incident, Mr. Bayramoglu says he wishes he had died because he has suffered so much being in jail, and during the trial, especially when he saw pictures of Tracy Jones'

-6-

FIKRI BAYRAMOGLU - NO. 8215

body. He said that during his first court appearance, he thought the District Attorney was his attorney, and when his Public Defender, Gail O'Connor, first talked to him, he did not know what a D.A. or Coroner meant as she was explaining the circumstances of the crime to him. Bayramoglu said he "will never accept Tracy as a murder victim."

He said that he and Tracy and their families are both victims of this tragedy.

Victim's Statement:

This officer contacted the victim's sister, Micki Harris, by telephone, asking her if she wanted to make any comments regarding her sister's death. Ms. Harris said she would like to have some time to collect her thoughts, and she added that she would mail a letter to the Probation Department. As of the date of this dictation, I have not received Ms. Harris' letter.

Prior Arrests:

The C.I.I. shows no prior criminal record for the defendant.

Department of Motor Vehicle records show the defendant had a valid driver's license which expires on his birthday in 1983. One traffic violation was noted.

SOCIAL FACTORS.

Family Background:

Fikri Bayramoglu states he was born in Istanbul, Turkey. His father worked all of his life as a residential contractor and his mother was a housewife. Fikri is the third of five children born to his parents. His sister married an American serviceman and currently resides in Yuba City, California. He has a brother who apparently works for the Department of Highways in Sacramento, California. He has two other brothers who reside in Turkey. Fikri said he has close relationships with his brother and sister in California and he describes his childhood as being a normal and happy one.

-7-

FIKRI BAYRAMOGLU - NO. 8215

Medical:

The defendant described his overall health as good. He did say there is a lump on his chest from his self-inflicted stab would. He says he has had ulcers for many years, and this is why he does not consume very much alcohol. He told he during my second interview with him, that he does not like to talk about this homocide because he becomes sick afterwards. He says that after I spoke to him about the circumstances surrounding Tracy Jones' death, he got a headache and he had to take some Malox for his stomach.

Drug Usage:

Bayramoglu reports that he did not use any illicit drugs at all while he lived in Turkey. He said that shortly after he arrived in the United States, he was introduced to some marijuana while he was attending a party with friends in Berkeley, California. He said that in 1977 he started to smoke marijuana quite heavily and regularly to help him deal with his feelings of depression. He says he was smoking marijuana just about every day. He said he had smoked marijuana the day he shot Tracy Jones and he further added that just previous to this incident, he was smoking marijuana constantly. He estimated that, at the most, he spent about $40.00 a month on marijuana. He thinks he could have become an alcoholic were it not for his ulcer.

Financial Status:

Bayramoglu reports that while he has been in jail, his brother gives him money and some friends of his, Frank and Matie Pringle, send him about $20.00 every month. He says his only asset of any real worth is a 1955 Chevrolet pickup truck.

Clinical Information:

This Officer received several psychiatric reports prepared at the Court's request. These reports are attached to the Probation Report. One report prepared by Doctor Joseph Gutstadt, M.D. on April 13, 1982, diagnosed the defendant as "schizophrenic, psychosis, chronic, paranoid type." In discussing his psychological health, Bayramoglu says that he can accept being parenoid, but he does not think he is schizophrenic.

FIKRI BAYRAMOGLU - NO. 8215

Character References:

Three character reference letters were mailed on the defendant's behalf, but as of the date of this dictation, there has just barely been enough time to receive any responses.

## EVALUATION

Fikri Bayramoglu was found guilty by a jury of Second Degree Murder and the Use of a Firearm Allegation was found to be true. Subsequent jury deliberations found that the defendant was legally sane when he commited the murder.  After speaking with the defendant and reading many psychiatric reports, it appears that he was deeply depressed and suicidal when he shot Tracy Jones.  It is my impression that he shot Ms. Jones because he felt that if he could not have her, no one should have her either.  The defendant said he was smoking marijuana, "almost constantly" before he shot Ms. Jones. I'm sure his injestion of this drug did not help him think in a clear and rational way.  This incident is a tragic affair.  A young woman's life was lost, in part, because of the defendant's jealous and possessive feelings toward her.  One can only wonder what would have happened if the defendant had received some psychiatric help before this incident occurred.  He did say at one point that a friend of his told him to see a psychiatrist because he looked so depressed, but Bayramoglu said that he did not know what a psychiatrist was.

Regarding the sentencing in this case, it appears that pursuant to Penal Code Section 669, the defendant should serve a two year term for the 12022.5 P.C. enhancement before he begins serving his 15 to life sentence for Second Degree Murder.

## RECOMMENDATION

It is, therefore, respectfully recommended that probation be denied, that the defendant be sentenced to serve two years for the 12022.5 P.C. enhancement in State Prison; and it is further recommended that the defendant serve a consecutive term of life as prescribed by law.

FIKRI BAYRAMOGLU - NO. 8215

Respectfully submitted,

JAMES B. SOETAERT
Chief Probation Officer

By _Richard Howell_
RICHARD HOWELL
Deputy Probation Officer

_Clifford Dunn_
CLIFFORD DUNN
Supervisor

RH/am

cc: District Attorney
Public Defender

I have read and considered the foregoing
report of the probation officer.

JUDGE OF THE ABOVE ENTITLED HONORABLE COURT

-11-

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION

ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
**CORRECTIONAL TRAINING FACILITY**
P.O. Box 686
Soledad, CA 93960



# DECLARATION OF CUSTODIAN OF RECORDS

I declare as follows:

I am a _office tech_ employed by the California Department of Corrections and Rehabilitation (CDCR) at the Correctional Training Facility (CTF) in Soledad, California. In my capacity, I am an authorized custodian of records and/or other qualified witness, and have authority to certify these records as true and correct.

Except where based on information and belief, I have personal knowledge of the facts as set forth in this declaration.

Inmate records are kept in the regular course of business by all CDC institutions by means of reports and entries in the Central File and/or local BPT files. These reports and entries pertaining to an inmate are prepared at or near the time of their occurrence by persons with knowledge of the circumstance or events.

The documents attached hereto are true and correct copies of the documents from the file(s) of inmate _Bayramoglu #C-54604_ . They represent the latest information received in written form. They may be outdated as the result of new or revised information, which has not been received or filed.

I declare under penalty of perjury that the foregoing is true, and that if called as a witness, I would so testify.

Executed on ___1/28/08___ , at Soledad, California
                      date

By: _Ann Pedevilla_
         signature

_Ann Pedevilla_
    printed name

# EXHIBIT 4

### Disciplinary History Sheet

| DATE | LOCATION | RULE # | OFFENSE | DISPOSITION |
|---|---|---|---|---|
| 12/14/87 | CMC-E | 3041(b) | Failure to Report (Div. "F") | Guilty; assessed 30 days loss of credits and one weekend CTQ (suspended, pending 90 days clear conduct), unassigned from school program. |
| 03/12/93 | CSP-SOL | 3005(b) | Failure to Obey a Direct Order (Admin.) | Guilty; assessed 40 hours extra duty (suspended, pending 90 days disciplinary-free conduct. |
| 09/27/93 | CSP-SOL | 3041(a) | Refusal to Work (Admin.) | Guilty; assessed 20 hours extra duty warned and counseled. |
| 11/10/93 | CSP-SOL | 3006(a) | Possession of Inmate Manufactured Weapon (Div. "A") | Guilty; assessed 360 days loss of credits and 10 days CTQ, also assessed 10 month SHU term. |
| 04/22/94 | CSP-SOL | 3005(c) | Physical Altercation (Div. "D") | Guilty; assessed 90 days loss of credits and 10 days CTQ. |
| 10/10/94 | CSP-COR | 3005(c) | Physical Altercation (Div. "D") | Guilty; assessed 0 days loss of credits due to administrative error. |
| 10/02/97 | MCSP | 3005(b) | Refuse to Comply With Orders (Admin.) | Guilty; reprimanded and counseled. |
| 02/18/98 | CTF | 3005(b) | Disobeying a Direct Order (Div. "F") | Guilty; assessed 30 days loss of credits, counseled and reprimanded. |
| 11/21/01 | CTF | 3041(a) | Refusal to Work (Div. "F") | Guilty; assessed 30 days loss of credits, 10 days CTQ and 40 hours extra duty, counseled and reprimanded. |
| 01/18/02 | CTF | 3005(b) | Refusing to Complete Extra Duty Assignment (Div. "F") | Guilty; assessed 15 days loss of credits, counseled, warned and reprimanded. |
| 05/07/02 | CTF | 3005(c) | Mutual Combat without Serious Injuries (Div. "D") | Guilty; assessed 90 days loss of credits and 20 hours extra duty, counseled, warned and reprimanded. |
| 06/11/02 | CTF | 3005(b) | Refusing to Complete Extra Duty Assignment (Div. "F") | Action Pending. |
| 06/12/02 | CTF | 3041(b) | Refusing to Report to Work (Div. "F") | Guilty; assessed 0 days loss of credits, counseled, warned and reprimanded. |

RAMOGLU, FIKRI                    C54604                    AUG/2002

# *DISCIPLINARY SHEET*

## *CDC 128-A'S.*

| | | |
|---|---|---|
| *06-20-02* | *CTF* | *HOSTILE AND ARGUMENTATIVE* |
| *02-20-98* | *CTF* | *FAILURE TO REPORT* |
| *02-18-98* | *CTF* | *REFUSED TO OBEY A DIRECT ORDER* |
| *02-07-97* | *MCSP* | *FAILURE TO REPORT* |
| *10-21-96* | *MCSP* | *FAILURE TO REPORT* |
| *08-08-96* | *MCSP* | *FAILURE TO REPORT* |
| *08-20-93* | *CSP* | *OVER FAMILIARITY* |
| *10-12-89* | | *UNAPPROPRIATE CONDUCT* |
| *04-26-89* | | *CALLS AND PASSES* |
| *11-10-87* | *CMC-E* | *FAILURE TO REPORT* |
| *07-14-87* | *CMC-E* | *FAILURE TO REPORT* |
| *08-12-87* | *CMC-E* | *FAILURE TO REPORT* |
| *10-07-87* | *CMC-E* | *FAILURE TO REPORT* |

BAYRAMOGLU, FIKRI          CDC# C54604          CTF-SOLEDAD          2002

# EXHIBIT 5

**PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS**
**(REVISED AUGUST 1998)**
**PAROLE CONSIDERATION HEARING**
**AUGUST 2002 LIFER CALENDAR**

**CORRECTIONAL TRAINING FACILITY, SOLEDAD**
**MAY 16, 2002**

This is the sixth psychological evaluation for the Board of
Prison Terms on inmate Fikri Bayramoglu, CDC# C-54604, who
has been incarcerated for approximately 22 years. This
report is the product of a personal interview, conducted on
05/16/02, as well as a review of his Central file and unit
health record. This interview was a single contact with
this individual for the sole purpose of preparing this
report.

### PSYCHOSOCIAL ASSESSMENT

**I.  IDENTIFYING INFORMATION:**

Inmate Bayramoglu is a 53-year-old, single, Turkish
male. His stated religious affiliation is none. There
were no unusual physical characteristics noted. He
denied the use of any nicknames or aliases. He denied
any gang affiliation.

**II. DEVELOPMENTAL HISTORY:**

Inmate Bayramoglu is the third of five children. He
has one sister and two brothers who also live in the
United States. They have businesses and families.
However, the inmate has had no contact with them since
1992. The inmate also has a brother who remains in
Turkey. He denied any history of birth defects or
abnormalities of developmental milestones.

Inmate Bayramoglu denied a history of cruelty to
animals, or a history of enuresis or acts of arson. He
also denied any significant childhood medical history,
or a childhood history of physical or sexual abuse as
either a perpetrator or a victim.

BAYRAMOGLU, FIKRI
CDC NUMBER:  C-54604
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

### III.  EDUCATIONAL HISTORY:

Inmate Bayramoglu states that he attended Turkish middle school, and then received his GED while at California Men's Colony (CMC-East) in 1984.  His most recent grade point level was measured at 7.3 TABE in December 1999.  The inmate is not currently involved in any educational programming.

### IV.  FAMILY HISTORY:

Inmate Bayramoglu's mother and father both died in 1992.  He has had no contact with any of his siblings since 1992.

### V.  PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:

Inmate Bayramoglu stated that he is a heterosexual male.  He denied any history of high-risk sexual behavior or sexual aggression.

### VI.  MARITAL HISTORY:

Inmate Bayramoglu has never been married and has no children.

### VII.  MILITARY HISTORY:

Inmate Bayramoglu spent two years in the Turkish Armed Forces.  He received and honorable discharge and achieved the rank of sergeant.  For clarification purposes, the Turkish Army is an ally of the American Armed Forces.

### VIII.  EMPLOYMENT/INCOME HISTORY:

Inmate Bayramoglu worked in construction prior to his commitment offense.

Since his incarceration, this inmate has completed vocational shoe repair at CMC-E in 1992.

BAYRAMOGLU, FIKRI
CDC NUMBER:   C-54604
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE


IX.   **SUBSTANCE ABUSE HISTORY**:

Inmate Bayramoglu denied the use of alcohol or drugs.
However, since his incarceration, he has completed
numerous self-help groups, and has chronos in his unit
health record for all of these.  All of these self-help
groups were completed while he was at CMC-E.  He
attended one quarter of Alcoholics Anonymous at CMC-E
in 1990.  He completed Stress Management in 1990 at
CMC-E.  He has a chrono for beginning Category X
therapy groups in 1990 from CMC-E.  He completed
Decision-Making in 1990 at CMC-E.  He completed the
Assertiveness Training Individual/Group Therapy in 1991
at CMC-E.  He completed Relaxation Therapy Training in
1992 at CMC-E.  He has a chrono for Anger Management
Group Therapy in 1992 at CMC-E.  He completed the
Rational Emotive Group Therapy in 1992 at CMC-E.  He
has a chrono for Rational Emotive Individual Therapy in
1992 at CMC-E.  He completed Self-Esteem Individual
Therapy in 1992 at CMC-E.  He completed Group Therapy
in 1992 at CMC-E.  He completed Anger Management
Individual Therapy in 1992 at CMC-E, as well as the
Anger Management Group Therapy in 1992 at CMC-E.  He
also completed one-on-one individual therapy in 1992 at
CMC-E.

X.   **PSYCHIATRIC AND MEDICAL HISTORY**:

Inmate Bayramoglu denied any history of significant
medical problems.  He denied any history of suicidal
behavior or attempts.  He denied a history of serious
accidents or head injuries, or a history of seizures or
other neurological conditions.

However, when this evaluator brought up his insanity
plea at the time of his trial for Second Degree Murder,
the inmate stated that he was devastated when he
separated from his girlfriend, and he wished that he
would have sought help.  He stated that he was seeing
her everywhere when she was not there (I believe this
was in reference to visual hallucinations), but that he
was not in a cultural environment where he knew enough
to seek help, so he did not.

BAYRAMOGLU, FIKRI
CDC NUMBER:  C-54604
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR


XI.   **PLANS IF GRANTED RELEASE:**

Inmate Bayramoglu stated that, should he be paroled, he
would return to Turkey, where he would work in the
American tourism industry.  He believes that he will do
very well on parole.

### CLINICAL ASSESSMENT

XII.  **CURRENT MENTAL STATUS/TREATMENT NEEDS:**

Inmate Bayramoglu appeared younger than his stated age
of 53.  He was appropriately dressed and groomed.  He
was calm, cooperative, coherent and alert throughout
the interview.  He speaks English very well, despite it
being a second language.  His speech, flow of thought
and affect were all within the normal range.  His
intellectual functioning was estimated to be within the
average range.  There was no evidence of a mood or
thought disorder.  His judgment appeared to be sound.
He showed some insight into his commitment offense.

**CURRENT DIAGNOSTIC IMPRESSIONS (DSM-IV):**

**AXIS I:**    No Contributory Clinical Disorder.
**AXIS II:**   Personality Disorder, NOS (Not Otherwise
               Specified), with Antisocial, Dependent and
               Grandiose Features.
**AXIS III:**  No Contributory Physical Disorder.
**AXIS IV:**   Long-term incarceration.
**AXIS V:**    Global Assessment of Functioning (GAF) = 75.

His prognosis is positive for being able to maintain
his present gains in the community upon parole.

XIII. **REVIEW OF LIFE CRIME:**

When talking about his commitment offense, inmate
Bayramoglu is very illustrative in his psychological
process.  He does not talk about the victim, he talks
about himself.  He stated, "I was never a typical

BAYRAMOGLU    C-54604    CTF-CENTRAL    05/17/02    gmj

BAYRAMOGLU, FIKRI
CDC NUMBER:  C-54604
BPT PSYCHOLOGICAL EVALUATION
PAGE FIVE

criminal.  This tragic event happened under the
extremely severely psychotic depression that I was
suffering.  It was so devastating.  After she broke up
with me, I could not go on.  I had nothing to live for.
I am so deeply sorry."

The inmate was sorry about killing his victim (his
former girlfriend).  However, as one can also see, he
does not assume responsibility, so he is not assuming
responsibility in a truly remorseful way.  The inmate
states that he is sorry about this happening, but he
also doesn't see how his behavior or his issues play a
part.

XIV. <u>ASSESSMENT OF DANGEROUSNESS</u>:

Inmate Bayramoglu currently has received several
CDC-115s pending, to which the inmate categorically
denies all disciplinary charges, as he is convinced
that he has a spotless disciplinary history.  Again,
the inmate does not see where any of his behavior may
contribute to any situations where things may happen.

In terms of risk assessment, things appear to happen
around this inmate quite frequently.  In other areas
of his medical file, in another context, this inmate
states that he needs to be single-celled because he
does not do well living with a cellmate.  Therefore,
there are other areas where the inmate himself states
that he is at above average risk for violence.

A.  Inmate Bayramoglu is responsible for his behavior.
    However, he has accrued several CDC-115s.  He does
    not appear to be above or below risk for violence
    compared to any other Level II inmate.

B.  Within the community, the risk for violence from
    this inmate is unknown.  Several factors exist
    which would show that in a community setting, his
    risk for violence would be higher than the average
    citizen, mainly due to his lack of assuming
    responsibility and a lack of true remorse for his
    commitment offense.

BAYRAMOGLU, FIKRI
CDC NUMBER: C-54604
BPT PSYCHOLOGICAL EVALUATION
PAGE SIX

     C.  A significant precursor which could lead to violence for this inmate would be the continued denial of any responsibility for this crime, and continuing along that mind-set. The inmate denies any alcohol or drug problems, but a return to any substance abuse or mind-altering chemicals or a return to any kind of criminal activity would increase the precursors to return to violent actions.

## XV.  CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

     A.  This inmate is responsible for his behavior, whether he feels he is or not. He has the capacity to abide by institutional standards.

     B.  This inmate does not have a mental health disorder which would necessitate treatment, either during his incarceration period or following parole.

     C.  Inmate Bayramoglu denies having an alcohol or drug abuse problem, so no recommendations are made in this area.

*M. Carswell PhD*

**M. CARSWELL, Ph.D.**
**Staff Psychologist**
**CORRECTIONAL TRAINING FACILITY, SOLEDAD**

*B. Zika, PH.D.*

**B. ZIKA, Ph.D.**
**Senior Supervising Psychologist**
**CORRECTIONAL TRAINING FACILITY, SOLEDAD**

MC/gmj

D:  05/16/02
T:  05/17/02