United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   FIKRI BAYRAMOGLU,                    No C-07-4374 VRW (PR)

12              Petitioner,

13         v                         ORDER DENYING PETITION FOR WRIT
                                     OF HABEAS CORPUS
14   BEN CURRY, Warden

15              Respondent.

16   _____/

17

18        Pro se petitioner Fikri Bayramoglu, a state prisoner

19   currently incarcerated at Chuckawalla Valley State Prison in Blythe,

20   California, seeks a writ of habeas corpus under 28 USC § 2254

21   challenging the California Board of Parole Hearings' ("BPH") October

22   25, 2006 decision to deny him parole.

23        Per order filed on January 10, 2008, the court found

24   petitioner's claim that BPH violated his due process rights, when

25   liberally construed, colorable under § 2254, and ordered respondent

26   to show cause why a writ of habeas corpus should not be granted.

27   Doc #8.  Respondent has filed an answer and petitioner has filed a

28   traverse.  Doc ## 11 & 12.

1

**I**

2   On April 17, 1980, petitioner shot Tracy Lee Jones several

3 times and killed her.  Doc #11-1 at 15.  He also stabbed himself

4 several times with a knife and was taken to a hospital.  Id at 15-

5 16.  While in the ambulance petitioner stated:  "I killed my

6 girlfriend.  Please let me die."  Id at 16.

7   On October 5, 1982, petitioner was sentenced to fifteen

8 years to life in state prison following his conviction by jury of

9 second degree murder.  Doc #11-1 at 2-3.

10   On October 25, 2006, petitioner appeared before BPH for

11 his sixth subsequent parole suitability hearing.  Doc #11-1 at 5 &

12 19.  At that hearing, BPH found petitioner was "not suitable for

13 parole and would pose an unreasonable risk of danger to society or a

14 threat to public safety if released from prison."  Id at 35.  BPH

15 cited multiple reasons to support its decision, including:  (1) the

16 calculated and "especially cruel and callous" nature of the crime;

17 (2) the inexplicable motive for the crime in relation to the

18 offense; (3) petitioner's failure to "develop a marketable skill

19 which could be put to use upon release"; (4) petitioner's failure to

20 participate sufficiently in self-help and "demonstrate positive

21 evidence of change"; (5) petitioner's extensive disciplinary

22 problems while incarcerated; (6) petitioner's failure to "assum[e]

23 responsibility in a truly remorseful way"; (7) petitioner's

24 unfavorable psychological report indicating his "above-average risk

25 for violence"; and (8) petitioner's lack of adequate parole plans.

26 Id at 35-38.  Petitioner's parole was deferred for four years.  Id

27

28       **2**

at 38.

Petitioner challenged BPH's decision in the state superior court, which on March 19, 2007 rejected his claims in an order that did not reach the merits.  Doc #11-5 at 2.  On August 8, 2007, the California Supreme Court summarily denied his petition for review.  Id at 12.  This federal petition for a writ of habeas corpus followed.  Doc #1.

II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 USC § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."  <u>White v Lambert</u>, 370 F3d 1002, 1009-10 (9th Cir 2004).  Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 USC § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 USC §

3

2254(d).  Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Williams v Taylor</u>, 529 US 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court unreasonably applied Supreme Court precedent, the only definitive source of clearly established federal law under 28 USC § 2254(d) rests in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  <u>Williams</u>, 529 US at 412; <u>Clark v Murphy</u>, 331 F3d 1062, 1069 (9th Cir 2003).

Where the state court gives no reasoned explanation of its decision regarding a petitioner's federal claim, the federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law.  <u>Plascencia v Alameida</u>, 467 F3d 1190, 1198 (9th Cir 2006); <u>Himes v Thompson</u>, 336 F3d 848, 853 (9th Cir 2003); <u>Delgado v Lewis</u>, 223 F3d 976, 981-82 (9th Cir 2000).  "[W]hile we are not required to defer to a state court's decision when that court gives us nothing to defer to, we must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law."  <u>Fisher v Roe</u>, 263 F3d 906, 914 (9th Cir 2001), overruled on other

**4**

grounds by <u>Payton v Woodford</u>, 346 F3d 1204, 1217 n18 (9th Cir 2003).

### III

Petitioner seeks federal habeas corpus relief from BPH's October 25, 2006 decision finding him unsuitable for parole and denying him a subsequent hearing for four years on the ground the decision does not comport with due process.  Liberally construed, petitioner's argument is that the decision was supported by "no evidence that [he] would pose unreasonable risk of danger to society."  Doc #1 at 6.

### A

Under California law, prisoners serving indeterminate life sentences, like petitioner, become eligible for parole after serving minimum terms of confinement required by statute.  <u>In re Dannenberg</u>, 34 Cal 4th 1061, 1069-70 (2005).  At that point, California's parole scheme provides that the parole board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration."  Cal Penal Code § 3041(b).  Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  Cal Code Regs tit 15, § 2402(a).  In making this determination the parole board

must consider various factors including the prisoner's base and other commitment offenses, social history, past criminal history, past and present mental state and attitude toward the crime.  See Cal Code Regs tit 15, § 2402(b)-(d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" that cannot be denied without adequate procedural due process protections."  <u>Sass v California Bd of Prison Terms</u>, 461 F3d 1123, 1127 (9th Cir 2006), quoting <u>McQuillion v Duncan</u>, 306 F3d 895, 902 (9th Cir 2002).  It matters not that a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  <u>Biggs v Terhune</u>, 334 F3d 910, 914-15 (9th Cir 2003).

Petitioner's due process rights require that "some evidence" support the board's decision finding him unsuitable for parole.  <u>Sass</u>, 461 F3d at 1128.  This "some evidence" standard is deferential, but ensures that "the record is not so devoid of evidence that the findings of [the board] were without support or otherwise arbitrary."  <u>Superintendent v Hill</u>, 472 US 445, 457 (1985).  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Id at 455.  Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached."  Id at 455-56.

Due process also requires that the evidence underlying the

6

parole board's decision have some indicium of reliability.  <u>Biggs</u>, 334 F3d at 915; <u>McQuillion</u>, 306 F3d at 904.  Relevant to this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board.  See <u>Pedro v Oregon Parole Bd</u>, 825 F2d 1396, 1399 (9th Cir 1987).  If the board's determination of parole unsuitability is to satisfy due process, there must be some reliable evidence to support the decision.  <u>Rosas v Nielsen</u>, 428 F3d 1229, 1232 (9th Cir 2005).

B

Petitioner claims BPH's finding that he was unsuitable for parole violated his due process rights because this finding was supported by "no evidence that [he] would pose unreasonable risk of danger to society."  Doc #1 at 6.  Petitioner is mistaken.

The record shows that although BPH afforded petitioner and his counsel an opportunity to speak and present petitioner's case at the hearing, petitioner refused to attend the hearing or to assist his attorney in presenting his case.  Doc #11-1 at 8-10 & 32-33. The record also shows that BPH gave petitioner and his counsel time to review relevant documents and provided petitioner with a reasoned decision in denying parole.  Id at 10-14 & 35-41.  Additionally, the record shows BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that petitioner posed "an unreasonable risk of danger to society or a threat to public safety if released from prison."  Id at 35; see Cal Code Regs tit 15, § 2402(a) (stating a

7

prisoner determined to be an unreasonable risk to society shall be denied parole).

First, BPH found the commitment offense was carried out in a "calculated" and "especially cruel and callous manner" and "the motive for the crime was inexplicable in relation to the offense." Doc #11-1 at 35; see Cal Code Regs tit 15, § 2402(c)(1) (listing "exceptionally callous disregard for human suffering," "dispassionate and calculated manner" of offense and "inexplicable or very trivial" motive in relation to the offense as factors tending to show unsuitability for parole). These conclusions were "drawn from the Statement of Facts wherein the prisoner * * * armed himself and shot and killed the victim who was not armed and presented no threat to [him]." Doc #11-1 at 35-36.

Second, BPH found petitioner "failed to develop a marketable skill which could be put to use upon release" and "[did] not have viable residential plans and * * * [did] not have employment plans." Doc #11-1 at 36-38; see Cal Code Regs tit 15, § 2402(d)(8) (listing "realistic plans for release" and "develop[ment of] marketable skills" as factors tending to show suitability for parole). BPH noted petitioner wished to return to his home country of Turkey, but "[did] not have support letters" stating how he would accomplish this. Doc #11-1 at 38; see also id at 40.

Third, BPH found petitioner had "not sufficiently participated in self-help," "failed to demonstrate positive evidence of change" and had extensive disciplinary problems while

**8**

incarcerated.   Doc #11-1 at 36; see Cal Code Regs tit 15,
§ 2402(c)(6) (listing "serious misconduct in prison or jail" as a
factor tending to show unsuitability for parole).   Since the
beginning of his incarceration through the time of the hearing,
petitioner had accrued thirteen serious disciplinary infractions,
with the most recent occurring in June 2002.   Doc #11-1 at 36.   In
the same time period petitioner also accrued thirteen "counseling
chronos" due to behavior problems.   Id.

Finally, BPH observed that petitioner's most recent
psychological evaluation stated that he had not "assum[ed]
responsibility [for the crime] in a truly remorseful way" and that
he presented an "above-average risk for violence."   Doc #11-1 at 37;
see also Doc #11-2 at 21.   The evaluation notes petitioner "does not
talk about the victim; he talks about himself.   * * * [He] states
that he is sorry about this happening, but he also doesn't see how
his behavior or his issues played a part."   Id at 36-37; see also
Doc #11-2 at 20-21.   In discussing petitioner's risk assessment, the
evaluation states that "things appear to happen around this inmate
quite frequently," noting petitioner is assigned to a single cell
"because he does not do well living with a cellmate."   Id at 37; see
also Doc #11-2 at 21.

The state superior court denied petitioner's habeas corpus
petition but only addressed petitioner's claim that he should be
transferred to Turkey, calling the claim "absurd"; the court did not
discuss BPH's decision to deny parole.   Doc #11-5 at 2.   The state
supreme court summarily denied his petition for review.   Id at 12.

**9**

Because no state court has addressed the merits of petitioner's federal due process claim in a reasoned opinion, this court must conduct an independent review of the record to determine whether the state court's denial of habeas relief was an objectively unreasonable application of clearly established federal law.  See Plascencia, 467 F3d at 1198.  As stated earlier, due process requires that the BPH decision to deny parole be supported by "some evidence."  See Sass, 461 F3d at 1128.

On this record, this court finds the state courts' rejection of petitioner's due process claim was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, and it was not based on an unreasonable determination of the facts.  See 28 USC § 2254(d); Plascencia, 467 F3d at 1198.

The record shows BPH had some reliable evidence to support its finding that petitioner was not suitable for parole because he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  First, petitioner's shooting of an unarmed woman who presented no threat to him was especially cruel and callous.  Doc #11-1 at 35-36.  Second, petitioner's disciplinary record demonstrated a pattern of hostility, confrontation and inability to follow institutional rules.  Doc #11-2 at 14-15.  Finally, Petitioner's most recent psychological evaluation assessed his risk for violence as "higher than the average citizen."  Doc #11-2 at 21.

Because BPH's determination that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society

if released is supported by "some evidence," petitioner's due
process rights have not been violated.  <u>Sass</u>, 461 F3d at 1128; see,
for example, <u>Irons v Carey</u>, 505 F3d 846, 850 (9th Cir 2007)
(upholding denial of parole based solely on gravity of offense).

IV

For the reasons set forth above, the petition for a writ
of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and
close the file.



IT IS SO ORDERED.



_____
VAUGHN R WALKER
United States District Chief Judge

G:\PRO-SE\VRW\HC.07\Bayramoglu-07-4374-bph denial.wpd

11